REQUESTED BY: Dear Senator Labedz:
You indicate that you are considering introducing legislation to insure the continuance of a court in South Omaha. As a part of your investigation in preparation for this action you ask whether section 14-125, R.R.S. 1943, requires the continuance of a courtroom in South Omaha.
As background to this opinion request and the analysis following, it should be pointed out that certain problems were brought to light involving the Municipal Court of Omaha Nebraska. Pursuant to those problems an evaluation of the Omaha Municipal Court was conducted by the Court Administrator's Office. Certain recommendations were made as a result of that evaluation. Included among them was a recommendation that the branch court of the Omaha Municipal Court located in South Omaha be abolished; or, in the alternative, that court be held there only one day a week.
Section 14-125, provides:
 "Any rights, power or authority acquired, granted or received or possessed by any person, city or village through consolidation effectuated under the terms of Chapter 212 of the Session Laws of Nebraska for 1915, are hereby granted and continued."
Chapter 212, enacted in 1915 as an emergency act, provided for the merger between a metropolitan class city and a city of the first or second class or village adjoining such city. Section 4 of that Act provides, in part:
 "Where at the time of such consolidation, there exists and is established under existing law governing any city of the first class so consolidated with a metropolitan city, a . . . police court . . . such . . . police court . . . shall not be abolished by this act, but shall be provided for, conducted and governed by the proper officers of such metropolitan city. And where at the time of such consolidation there has been elected and is in office a Police Magistrate in any city of the first class the incumbent thereof shall hold and continue in said office, at the salary under which he was elected, and exercise his functions and jurisdiction of Police Magistrate over the territory embraced, for Police Magistrate purposes, within the first class city at the time of consolidation, until the time provided for the election of Police Magistrate in the metropolitan city, and until the time of taking office pursuant to such election, at which election there shall be elected in the metropolitan city, as thus consolidated, two Police Magistrates, and the Mayor and Council of the metropolitan city shall then divide the metropolitan city into two Police Court districts and designate the place in each district where the Police Court shall be held, one of which places shall be within the territory formerly embraced within the first class city, and the Mayor and Council shall assign each of such Police Magistrates to a particular district at the beginning of his term. . . ."
Clearly, under Chapter 212 at the time of consolidation a metropolitan city was required to continue in existence a police magistrate court which embraced within its jurisdiction the area formerly held within the first class city.
Subsequently, in the 1921 Legislative Session, the Legislature enacted a bill contained in Chapter 116, Laws 1919-1921, section 18, containing a similar provision. It provided:
 "Where, at the time of such annexation or merger, there has been elected and is in office, a justice of the peace or police magistrate in any city or village annexed or merged, the incumbent thereof shall hold and continue in said office at the salary under which he was elected and exercised his functions and jurisdiction of police magistrate over the territory embraced for justice of the peace or police magistrate purposes, within the city or village at the time of such annexation or merger until the expiration of the term for which was elected."
Also, in Chapter 116, section 24, the current section 14-125
was enacted.
Arguably, under section 14-125, a right, power or authority granted, received or possessed by a person, city or village through consolidation would continue. The question to be addressed initially is whether any city or village acquired any rights, powers or authority to continue a police magistrate court under Chapter 212. It seems beyond argument that the City of Omaha acquired the right, power or authority to establish two police magistrate courts to divide the city into two districts for purposes of police court jurisdiction. For the purposes of this opinion it would serve little purpose to delve into the question of whether or not the City of Omaha was required to maintain two police court districts or merely authorized to do so. The reason such question is immaterial is that at the time under consideration police courts were of constitutional significance. Prior to 1920 the Constitution provided in Article VI, section 1:
 "The judicial power of this state shall be vested in a Supreme Court, district courts, county courts, justices of the peace, police magistrates, and such other courts inferior to the district courts as may be created by law for cities and incorporated towns."
In 1920 a Constitutional Convention was convened and adopted Article V, section 1 of the Constitution which provided:
 "The judicial power of the state shall be vested in a Supreme Court, district courts, county courts, justices of the peace, and such other courts inferior to the Supreme Court as may be created by law; . . . ."
Thus, the constitutional basis for police magistrate courts was eliminated. Subsequently, in LB 1032, of the Eighty-Second Legislature, Second Session, a unified system for county courts was adopted for the purpose of combining the functions of county courts, justice of the peace courts and police magistrate courts. Thus, police magistrate courts were abolished. Therefore, any rights, duties, powers or privileges relating to police magistrate courts arising under Chapter 212, Laws of 1915, were abolished.
It is clear that a legislative session cannot forever bind future Legislatures from reorganizing, streamlining or in other manners altering the particular structure of government where the Constitution does not prohibit such changes or alterations by subsequent Legislatures. We find no such prohibition with respect to police magistrate courts.
Section 26-101, R.R.S. 1943, established metropolitan courts in Omaha. They succeeded to all the powers, duties and authorities of police magistrates. Section 26-101, in part, provides:
 "There is hereby established and created in each city of the metropolitan and primary classes, a municipal court, which shall be held in such place as may be provided for that purpose within such city. It is hereby made the duty of such cities to provide suitable courtrooms, necessary equipment and room for the clerk of the court and the necessary help therefor, to be appointed by the judges of the court. The city may provide rooms in such location in the city as it sees fit where the judges of the municipal court shall conduct police court and exercise the duties theretofore performed by police magistrates and be governed by the procedure and jurisdiction provided by law for police courts. . . ."
LB 1032 in 1972 repealed the procedures relating to police courts. Sections 24-501 through 24-592, R.R.S. 1943, now govern. See section 26-122, R.R.S. 1943.
Generally, in the absence of a constitutional requirement, either the creating statute of the legislative body or the political subdivision to which such power is delegated establish the site at which a court is to hold its session. The statutes in this case have delegated that authority to the City of Omaha. We have examined the Municipal Code of the City of Omaha but have found no designation of the location at which the municipal court is to conduct its proceedings. Absent a specific designation by the City of Omaha it would appear that court for the Municipal Court of Omaha is to be held under a de facto designation in the rooms set aside by the City of Omaha for that purpose.
Generally, once a location at which a court is to sit has been specified, the court must sit in that location. See, Roberts v. State, 100 Neb. 199, and annotation 43 A.L.R. 1516, Place of holding sessions of trial court as affecting validity of its proceedings.
However, those general provisions have been overridden, at least as to county courts in Nebraska, by section 24-512
which authorizes the establishment of divisions of county courts at places other than the county seat.
A municipal court is a creation of the Legislature. The Legislature has, by virtue of its delegation under section26-101, R.R.S. 1943, authorized the cities of the metropolitan and primary classes to establish the location in which courts shall be held. The question then is whether a court must hold sessions at locations specified, where there are more than one, when it has been determined that insufficient court business exists at one such location. While this is a close question, we believe that in the present situation at a minimum the court has the power to set sessions at South Omaha for once a week. Further if the municipal court determines that the amount of business conducted is wasteful of court resources, and entirely unnecessary, the South Omaha branch could be closed. Section 14-125, R.R.S. 1943, would not preclude either action.